# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**BRUCE ALAN WOOTEN**                                                 **PLAINTIFF**

**v.**                                 **CIVIL ACTION NO. 1:19-CV-340-KS-MTP**

**RICHARD C. SMITH,** *et al.*                                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants** the pending Motions to Strike [49, 55] and **grants** the pending Motions to Dismiss [14, 16, 25, 27, 29, 32, 34, 41]. Plaintiff's claims against Defendants Herman Cox, James Lagasse, Jeff Bruni, Leonard Papania, Dustin Uselton, Luke Wilson, Troy Peterson, Hugh Keating, and Faith Peterson are **dismissed without prejudice**.

## I. BACKGROUND

This is a Section 1983 case. Plaintiff alleges that his ex-wife, Defendant Faith Peterson, used her position as a paralegal/court administrator to curry favor with various public officials, including prosecutors, judges, and law enforcement officers named as Defendants in this case. He contends that she conspired with the other Defendants to have him unlawfully arrested, charged, and convicted of felony child abuse, and to have him prosecuted on outstanding warrants. He asserted Section 1983 claims against numerous Defendants in their individual and official capacities. Each Defendant filed a motion to dismiss, and the motions are ripe for the Court's review.

## II. MOTION TO STRIKE [49]

Defendant Troy Peterson filed a Motion to Dismiss [32] on November 12, 2019. Plaintiff's response was due on November 26, 2019. L.U.Civ.R. 7(b)(4); FED. R. CIV. P. 6(a). Plaintiff filed one untimely response [48] on December 9, 2019, and another [54] on February 17, 2020. Plaintiff never sought or received an extension of the applicable deadline.

Peterson filed Motions to Strike [49, 55] Plaintiff's untimely responses. Plaintiff did not respond. Therefore, the Court **grants** Troy Peterson's Motions to Strike [49, 55] Plaintiff's untimely responses [48, 54] in opposition to Peterson's Motion to Dismiss [32].

## III. COX'S MOTION TO DISMISS [14]

Defendant Herman Cox argues that he is entitled to absolute immunity against Plaintiff's claims because all the allegations of Plaintiff's Second Amended Complaint relate to his actions as the prosecuting attorney for Harrison County, Mississippi. In response, Plaintiff apparently argues that the Court should jointly consider the allegations of his initial Complaint [1], Amended Complaint [4], and Second Amended Complaint [9]. He did not respond to Cox's immunity argument.

First, "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Plaintiff's Second Amended Complaint [9], the operative pleading, does

not incorporate or adopt any of the allegations from the initial or first amended complaint. Therefore, the only factual allegations the Court will consider are those in the Second Amended Complaint.

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Miller v. BAC Home Loans Servicing, LLP*, 726 F.3d 717, 726 (5th Cir. 2013).

A prosecutor enjoys "the same absolute immunity under § 1983 that the prosecutor enjoys at common law." *Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S. Ct.

984, 47 L. Ed. 128 (1976). Prosecutorial immunity is an affirmative defense, and the defendant "bears the burden of proving that the conduct at issue served a prosecutorial function." *Hoog-Watson v. Guadalupe County*, 591 F.3d 431, 437 n. 6 (5th Cir. 2009).

> [P]rosecutorial immunity extends to conduct that is intimately associated with the judicial phase of the criminal process, but not to those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings. In other words, prosecutorial immunity protects the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, but not the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.

*Id.* at 438. Prosecutorial immunity extends to decisions such as preparing, initiating, and pursuing a criminal prosecution, as well as the "decision to file or not file criminal charges." *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009). It even extends to a prosecutor's office administrative procedures that are directly related to prosecutorial functions, such as the supervision and training of assistant prosecutors, and the management of information technology in criminal cases. *Van de Kamp v. Goldstein*, 555 US 335, 343, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009).

Plaintiff alleged that Cox, as a prosecutor, "knew Plaintiff's due process rights were being violated and did nothing to assure that law enforcement followed proper procedure, did nothing to ensure Plaintiff was notified of trial, and wrongfully recommended that Plaintiff be held in custody pending an appellate bond being posted." Second Amended Complaint at 6, *Wooten v. Smith*, No. 1:19-CV-340-KS-MTP

(S.D. Miss. Oct. 14, 2019), ECF No. 9. Plaintiff also alleged that Cox "conspired with Defendant, James Lagasse, in an attempt to maliciously deny Plaintiff's right to a continuance; a denial of his right to a jury trial and to call witnesses; and attempts to increase Plaintiff's Court costs and bond costs in an attempt to keep him incarcerated pending his trial." *Id.* These are the only factual allegations concerning Cox in the Second Amended Complaint.

These allegations clearly concern Cox's actions as a prosecutor during the judicial process and surrounding Plaintiff's trial. Therefore, Cox enjoys absolute prosecutorial immunity from liability. The Court grants his Motion to Dismiss [14].

## IV. LAGASSE'S MOTION TO DISMISS [16]

Defendant James A. Lagasse, III argues that he is entitled to absolute judicial immunity against the allegations of Plaintiff's Second Amended Complaint. Plaintiff filed two responses [39, 45] to Lagasse's motion, and he did not address the issue of judicial immunity in either of them. Moreover, Plaintiff did not address the specific allegations of the Second Amended Complaint. Plaintiff apparently argues that the Court should jointly consider the allegations of his initial Complaint [1], Amended Complaint [4], and Second Amended Complaint [9].

As noted above, "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King*, 31 F.3d at 346. Therefore, the only factual allegations the Court will consider are those in the Second

Amended Complaint.

"Judicial immunity is an immunity from suit . . . [and] is not overcome by allegations of bad faith or malice and applies even when the judge is accused of acting maliciously and corruptly." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005); *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985). There are two exceptions to judicial immunity: (1) when the judge's actions are taken outside of his judicial capacity, and (2) when they are "taken in the absence of all jurisdiction." *Ballard*, 413 F.3d at 515.

It is undisputed that Defendant Lagasse was a Justice Court Judge in Harrison County, Mississippi, who presided over certain proceedings to which Plaintiff was a party. Plaintiff alleged that Lagasse conspired with Defendant Herman Cox "in an attempt to maliciously deny Plaintiff's right to a continuance; a denial of his right to a jury trial and to call witnesses; and attempts to increase Plaintiff's Court costs and bond costs in an attempt to keep him incarcerated pending his trial." Second Amended Complaint [9], at 6.

To determine whether a judge acted within his judicial capacity, the Court considers the following factors, which are "broadly construed in favor of immunity":

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Ballard*, 413 F.3d at 515. Lagasse's alleged actions – denying a continuance, denying

a jury trial, denying an opportunity to call witnesses in a trial – are all normal judicial functions. These actions were clearly undertaken within Lagasse's judicial capacity. As for jurisdiction, Plaintiff has neither alleged nor argued that Lagasse lacked jurisdiction to make these decisions.

Therefore, the Court concludes that Lagasse is entitled to absolute judicial immunity from liability against Plaintiff's claims. The Court grants Defendant James Lagasse's Motion to Dismiss [16].

## V. BRUNI'S MOTION TO DISMISS [25]

Defendant Jeff Bruni asserted multiple arguments in support of his motion to dismiss Plaintiff's claims. Plaintiff did not respond to Bruni's motion. It is undisputed that Bruni is the City Attorney for Gulfport, Mississippi. Plaintiff alleges that Bruni "was aware" of Defendant Faith Peterson's sexual relationship with Defendant Richard Smith, "but failed to bring forth his knowledge and despite the romantic involvement being a clear conflict of interest and inappropriate for Defendants, Richard C. Smith and Dustin Uselton, to remain involved in any further prosecution of any cases against Plaintiff." Second Amended Complaint [9], at 5. This is the only factual allegation concerning Bruni.

### A.     *Statute of Limitations*

First, Bruni argues that Plaintiff's claims against him are barred by the applicable statute of limitations. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action

is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). "The statute of limitations for Section 1983 claims is the forum state's personal-injury limitations period . . . ." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016); *see also Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). Therefore, Section 1983 claims must be filed "within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-49. A Section 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith*, 827 F.3d at 421. Therefore, "the limitations period begins when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.*

Plaintiff first asserted his claims against Bruni in his initial Complaint [1], filed on June 24, 2019. Plaintiff only alleged one date in the Second Amended Complaint [9]. He alleged that he was summoned to court on June 2, 2016, on felony child abuse charges. The Court cannot infer from this single factual allegation that Plaintiff knew that Bruni had injured him on June 2, 2016. Therefore, it is not evident that Plaintiff's claims against Bruni are time-barred.

## B.  *Failure to State a Claim*

Next, Bruni argues that Plaintiff failed to allege sufficient facts to state a Section 1983 claim against him in his official capacity. It is undisputed that Bruni is the City Attorney for Gulfport, Mississippi. A suit against a municipal employee in his official capacity is the same as a suit against the municipality. *Kentucky v.*

*Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). The Fifth

Circuit provided the following summary of the law concerning municipal liability

under § 1983:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.

> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.

> Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.

> A plaintiff must show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and

citations omitted).

Plaintiff did not allege any facts – or any conclusory assertions – that a

municipal policy or custom was the moving force behind Bruni's alleged actions. Therefore, Plaintiff failed to state a Section 1983 claim against Bruni in his official capacity.

Bruni also argues that Plaintiff failed to state a Section 1983 claim against him in his individual capacity. Plaintiff alleged that Bruni "was aware" of Defendant Faith Peterson's sexual relationship with Defendant Richard Smith, "but failed to bring forth his knowledge and despite the romantic involvement being a clear conflict of interest and inappropriate for Defendants, Richard C. Smith and Dustin Uselton, to remain involved in any further prosecution of any cases against Plaintiff." Second Amended Complaint [9], at 5.

Plaintiff did not respond to Bruni's motion and clarify the legal nature of this claim. Beyond a vague allusion to due process, Plaintiff did not cite any particular constitutional right in the Second Amended Complaint. "The first step in any § 1983 claim is to identify the specific constitutional right allegedly infringed." *Cantu v. Moody*, 933 F.3d 414, 420 n. 2 (5th Cir. 2019) (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)). A general reference to "due process" could refer to any number of constitutional provisions and rights. The Court declines to guess which specific rights Plaintiff believes the Defendants violated, or to make Plaintiff's argument for him as to how the Second Amended Complaint states a claim for relief. In the absence of clearer allegations or any clarification in briefing, the Court concludes that Plaintiff has failed to state a claim that Bruni deprived him of

a constitutional right.

For these reasons, the Court grants Defendant Jeff Bruni's Motion to Dismiss [25] Plaintiff's claims against him.

### VI. PAPANIA'S MOTION TO DISMISS [27]

Defendant Leonard Papania asserted multiple arguments in support of his motion to dismiss. Plaintiff did not respond to the motion. It is undisputed that Papania is the Chief of Police for Gulport, Mississippi. Plaintiff alleges that Papania "allowed correction officers to harass and intimidate Plaintiff during his time in custody, by reportedly threatening him and maliciously and repeatedly asking Plaintiff, 'Didn't you say you were suicidal?' and 'I thought I heard you say you were suicidal' in an attempt to keep Plaintiff in custody." Second Amended Complaint [9], at 7. This is the only factual allegation concerning Papania in the Second Amended Complaint [9].

### A.    *Statute of Limitations*

First, Papania argues that Plaintiff's claims against him are barred by the applicable statute of limitations. The Court rejects this argument for the same reasons provided above. Plaintiff did not allege the date on which Papania allegedly permitted officers to verbally harass him while he was detained awaiting trial. The Second Amended Complaint does not contain sufficient facts to infer that Plaintiff knew that Papania had injured him before June 24, 2016. Therefore, it is not evident from Plaintiff's allegations that his claims against Papania are time-barred.

## B.     *Failure to State a Claim*

Papania also argues that Plaintiff failed to state a viable Section 1983 claim against him. With respect to Plaintiff's claims against Papania in his official capacity, the Court grants Papania's motion for the same reasons provided above. Plaintiff did not allege any facts – or any conclusory assertions – that a municipal policy or custom was the moving force behind Papania's alleged actions. Therefore, Plaintiff failed to state a Section 1983 claim against Papania in his official capacity.

As for the Section 1983 claims against Papania in his individual capacity, Plaintiff did not respond to Papania's motion and clarify the legal nature of his claims. Beyond a vague allusion to due process, Plaintiff did not cite any particular constitutional right in the Second Amended Complaint. "The first step in any § 1983 claim is to identify the specific constitutional right allegedly infringed." *Cantu*, 933 F.3d at 420 n. 2. A general reference to "due process" could refer to any number of constitutional provisions and rights. The Court declines to guess which specific rights Plaintiff believes the Defendants violated, or to make Plaintiff's argument for him as to how the Second Amended Complaint states a claim for relief. In the absence of clearer allegations or any clarification in briefing, the Court concludes that Plaintiff has failed to state a claim that Papania deprived him of a constitutional right.

Regardless, Plaintiff alleges that Papania "allowed correction officers to harass and intimidate Plaintiff during his time in custody . . . ." Second Amended Complaint [9], at 7. But "[t]here is no vicarious or *respondeat superior* liability of supervisors

under section 1983. Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006). Plaintiff did not allege any facts demonstrating that Papania was personally involved in the alleged verbal harassment, or that Papania's actions caused the verbal harassment. Regardless, "[m]ere allegations of verbal abuse do not present actionable claims under § 1983." *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993).

For these reasons, the Court grants Defendant Leonard Papania's Motion to Dismiss [27].

## VII. USELTON & WILSON'S MOTION TO DISMISS [29]

Defendants Dustin Uselton and Luke Wilson asserted multiple arguments in support of their motion to dismiss Plaintiff's claims against them. Plaintiff did not respond to the motion. It is undisputed that Wilson was the City Prosecutor for the Gulfport, Mississippi, during the events in question, and that Uselton was an Assistant City Prosecutor.

Plaintiff alleged that Uselton had a romantic relationship with his ex-wife, Faith Peterson, and prosecuted the case against Plaintiff, despite the conflict of interest. Second Amended Complaint [9], at 4. Plaintiff alleged that the case was transferred from Municipal Court to Justice Court after he presented a photograph of Uselton leaving Faith Peterson's apartment building. *Id.* at 5. These are the only

specific factual allegations concerning Uselton in the Second Amended Complaint [9].

Plaintiff alleged that Faith Peterson "utilized municipal computers to search outstanding violations which may have been pending" against him, and that Wilson "prosecuted those cases and harassed Plaintiff in open court." *Id.* Plaintiff further alleged that Wilson is now Faith Peterson's boss. *Id.* These are the only specific factual allegations concerning Wilson in the Second Amended Complaint [9].

**A.    *Dustin Uselton***

*1.    Statute of Limitations*

First, Uselton argues that Plaintiff's claims against him are barred by the applicable statute of limitations. The Court rejects this argument for the same reasons provided above. Plaintiff did not allege any specific date with regard to Uselton's alleged actions. Therefore, it is not evident from Plaintiff's allegations that his claims against Uselton are time-barred.

*2.    Failure to State a Claim*

Next, Uselton argues that Plaintiff failed to state a viable Section 1983 claim against him. With respect to Plaintiff's claims against Uselton in his official capacity, the Court grants Uselton's motion for the same reasons provided above. Plaintiff did not allege any facts – or any conclusory assertions – that a municipal policy or custom was the moving force behind Uselton's alleged actions. Therefore, Plaintiff failed to state a Section 1983 claim against Uselton in his official capacity.

As for the Section 1983 claims against Uselton in his individual capacity,

Plaintiff did not respond to Uselton's motion and clarify the legal nature of his claims. Beyond a vague allusion to due process, Plaintiff did not cite any particular constitutional right in the Second Amended Complaint. "The first step in any § 1983 claim is to identify the specific constitutional right allegedly infringed." *Cantu*, 933 F.3d at 420 n. 2. A general reference to "due process" could refer to any number of constitutional provisions and rights. The Court declines to guess which specific rights Plaintiff believes the Defendants violated, or to make Plaintiff's argument for him as to how the Second Amended Complaint states a claim for relief. In the absence of clearer allegations or any clarification in briefing, the Court concludes that Plaintiff failed to state a claim that Uselton deprived him of a constitutional right.

### 3. *Prosecutorial Immunity*

Uselton also argues that he is entitled to prosecutorial immunity against Plaintiff's claims. As noted above, a prosecutor enjoys "the same absolute immunity under § 1983 that the prosecutor enjoys at common law." *Imbler*, 424 U.S. at 427. "[P]rosecutorial immunity extends to conduct that is intimately associated with the judicial phase of the criminal process, but not to those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Hoog-Watson*, 591 F.3d at 437 n. 6.

Plaintiff alleged that Uselton had a romantic relationship with his ex-wife, Faith Peterson, and prosecuted the case against Plaintiff, despite the conflict of interest. Second Amended Complaint [9], at 4. This is clearly conduct "intimately

associated with the judicial phase of the criminal process," *Hoog-Watson*, 591 F.3d at 437 n. 6, and Uselton enjoys prosecutorial immunity against Plaintiff's claims.

For these reasons, the Court grants Defendant Dustin Uselton's Motion to Dismiss [29].

**B.    *Luke Wilson***

1.    *Statute of Limitations*

First, Wilson argues that Plaintiff's claims against him are barred by the applicable statute of limitations. The Court rejects this argument for the same reasons provided above. Plaintiff did not allege any specific date with regard to Wilson's alleged actions. Therefore, it is not evident from Plaintiff's allegations that his claims against Wilson are time-barred.

2.    *Failure to State a Claim*

Next, Wilson argues that Plaintiff failed to state a viable Section 1983 claim against him. With respect to Plaintiff's claims against Wilson in his official capacity, the Court grants Wilson's motion for the same reasons provided above. Plaintiff did not allege any facts – or any conclusory assertions – that a municipal policy or custom was the moving force behind Wilson's alleged actions. Therefore, Plaintiff failed to state a Section 1983 claim against Wilson in his official capacity.

As for the Section 1983 claims against Wilson in his individual capacity, Plaintiff did not respond to Wilson's motion and clarify the legal nature of his claims. Beyond a vague allusion to due process, Plaintiff did not cite any particular

constitutional right in the Second Amended Complaint. "The first step in any § 1983 claim is to identify the specific constitutional right allegedly infringed." *Cantu*, 933 F.3d at 420 n. 2. A general reference to "due process" could refer to any number of constitutional provisions and rights. The Court declines to guess which specific rights Plaintiff believes the Defendants violated, or to make Plaintiff's argument for him as to how the Second Amended Complaint states a claim for relief. In the absence of clearer allegations or any clarification in briefing, the Court concludes that Plaintiff has failed to state a claim that Wilson deprived him of a constitutional right.

### 3. *Prosecutorial Immunity*

Wilson also argues that he is entitled to prosecutorial immunity against Plaintiff's claims. As noted above, a prosecutor enjoys "the same absolute immunity under § 1983 that the prosecutor enjoys at common law." *Imbler*, 424 U.S. at 427. "[P]rosecutorial immunity extends to conduct that is intimately associated with the judicial phase of the criminal process, but not to those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Hoog-Watson*, 591 F.3d at 437 n. 6.

Plaintiff alleged that Wilson prosecuted cases based on "outstanding violations" which Defendant Faith Peterson found and "harassed [him] in open court." Second Amended Complaint [9], at 5. This is clearly conduct "intimately associated with the judicial phase of the criminal process," *Hoog-Watson*, 591 F.3d at 437 n. 6, and Wilson enjoys prosecutorial immunity against Plaintiff's claims.

For these reasons, the Court grants Defendant Luke Wilson's Motion to Dismiss [29].

## VIII. TROY PETERSON'S MOTION TO DISMISS [32]

Defendant Troy Peterson argues that he is entitled to qualified immunity from liability against Plaintiff's claims. It is undisputed that Peterson is the Sheriff of Harrison County, Mississippi. Plaintiff alleged: "During Plaintiff's incarceration and awaiting bond, Defendant Troy Peterson (who is a member of the Sheriff's Department and also the uncle of Defendant Faith E. Peterson) attempted to use his position in an abuse of power to influence the case against Plaintiff by personally contacting the assigned Judge . . . ." Second Amended Complaint [9], at 6-7. Plaintiff also alleged that Troy Peterson "allowed correctional officers to harass and intimidate Plaintiff during his time in custody, by repeatedly threatening him and maliciously and repeatedly asking Plaintiff, 'Didn't you say you were suicidal?' and 'I thought I heard you say you were suicidal' in an attempt to keep Plaintiff in custody." *Id.* at 7. These are the only factual allegations concerning Troy Peterson in the Second Amended Complaint.

When "a qualified immunity defense is asserted in an answer or a motion to dismiss, the district court must – as always – do no more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Anderson v. Valdez*, 845 F.3d 500, 589-90 (5th Cir. 2016). This is not a heightened pleading standard, *id.* at 590, but the plaintiff must

"plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015). In that respect, it is no different than the typical 12(b)(6) standard of review under *Iqbal*.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). There are two steps in the Court's analysis. First, the Court determines whether the defendant's "conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id*. The Court may address either step first. *Pearson*, 555 U.S. at 236.

The Court granted Troy Peterson's Motions to Strike [49, 55] and struck Plaintiff's untimely responses [48, 54]. Plaintiff has the burden of negating Troy Peterson's properly raised qualified immunity defense. *Poole*, 691 F.3d at 627. In the absence of a timely response, the Court must conclude that Plaintiff has failed to

carry his burden, and Peterson's Motion to Dismiss [32] must be granted.

Even if the Court had not stricken Plaintiff's untimely responses, Plaintiff did not identify any clearly established constitutional right that Peterson violated, and he did not demonstrate that Peterson's actions were objectively unreasonable. As noted multiple times above, Plaintiff has not clarified the constitutional basis of his claims. Beyond a vague allusion to due process, Plaintiff did not cite any particular constitutional right in the Second Amended Complaint. "The first step in any § 1983 claim is to identify the specific constitutional right allegedly infringed." *Cantu*, 933 F.3d at 420 n. 2. A general reference to "due process" could refer to any number of constitutional provisions and rights. The Court declines to guess which specific rights Plaintiff believes the Defendants violated, or to make Plaintiff's argument for him as to how the Second Amended Complaint states a claim for relief. In the absence of clearer allegations or any clarification in briefing, the Court concludes that Plaintiff has failed to state a claim that Troy Peterson deprived him of a constitutional right.

For these reasons, the Court grants Defendant Troy Peterson's Motion to Dismiss [32].

## IX. KEATING'S MOTION TO DISMISS [34]

Among other things, Defendant Hugh Keating argues that Plaintiff did not allege sufficient facts to support a Section 1983 claim against him. Plaintiff did not respond to Keating's motion. It is undisputed that Keating served as General Counsel for Gulfport, Mississippi. Plaintiff alleged that Keating met with him about Faith

Peterson's actions; that Keating "knew that [certain] computers contained Defendant Faith E. Peterson's search history and wrongful activity in searching for incriminating information about Plaintiff;" and that Keating "assisted Defendant Faith E. Peterson by warning the prosecutor's office of Defendant Faith E. Peterson's activity," which "prompted the replacement of the computers . . . and spoliation of evidence." Second Amended Complaint [9], at 5-6.

With respect to Plaintiff's claims against Keating in his official capacity, the Court grants Keating's motion for the same reasons provided above.[1] Plaintiff did not allege any facts – or any conclusory assertions – that a municipal policy or custom was the moving force behind Keating's alleged actions. Therefore, Plaintiff failed to state a Section 1983 claim against Keating in his official capacity.

As for the Section 1983 claims against Keating in his individual capacity, Plaintiff did not respond to Keating's motion and clarify the legal nature of his claims. Beyond a vague allusion to due process, Plaintiff did not cite any particular constitutional right in the Second Amended Complaint. "The first step in any § 1983 claim is to identify the specific constitutional right allegedly infringed." *Cantu*, 933 F.3d at 420 n. 2. A general reference to "due process" could refer to any number of constitutional provisions and rights. The Court declines to guess which specific rights

---

[1] Keating argues that he was an independent contractor, rather than an employee of Gulfport. Plaintiff did not allege Keating's employment status. In fact, Plaintiff did not even allege that Keating was a municipal employee, which is arguably fatal to Plaintiff's Section 1983 claims against him. Regardless, given the standard of review on a 12(b)(6) motion, the Court can not accept Keating's assertion in briefing that he was an independent contractor. The Court will assume, for the sake of addressing the present motion, that Keating was an employee of Gulfport.

Plaintiff believes the Defendants violated, or to make Plaintiff's argument for him as to how the Second Amended Complaint states a claim for relief. In the absence of clearer allegations or any clarification in briefing, the Court concludes that Plaintiff has failed to state a claim that Keating deprived him of a constitutional right.

## X. FAITH PETERSON'S MOTION TO DISMISS [41]

Among other things, Defendant Faith Peterson argues that Plaintiff did not allege sufficient facts to support a Section 1983 claim against her. Plaintiff did not respond to Peterson's motion. Plaintiff alleged that Peterson is his ex-wife, and was employed by the City of Gulfport's Municipal Court at all times relevant to this case. Second Amended Complaint [9], at 3. He also alleged that she had been a probation officer employed by Harrison County and a paralegal for the Gulfport City Prosecutor's Office. *Id.* at 4. Plaintiff alleges that Peterson used her position at the Municipal Court and relationships – both professional and romantic – with public officials to convince a municipal judge to sign and enter orders she drafted, "which were intended to harass, vex, and annoy the Plaintiff as well as to subject him to unreasonable and unlawful arrest, search, and seizure." *Id.* Plaintiff claims that Peterson's actions caused his arrest and prosecution for felony child abuse, and the entry of a no-contact order against him. *Id.* Finally, Plaintiff alleges that Peterson used municipal computers to search for outstanding warrants on him and convinced a city prosecutor to pursue the dormant charges. *Id.* at 5.

With respect to Plaintiff's claims against Faith Peterson in her official capacity,

the Court grants her motion for the same reasons provided above. Plaintiff did not allege any facts – or any conclusory assertions – that a municipal policy or custom was the moving force behind Peterson's alleged actions. Therefore, Plaintiff failed to state a Section 1983 claim against Peterson in her official capacity.

As for the Section 1983 claims against Peterson in her individual capacity, Plaintiff did not respond to Peterson's motion and clarify the legal nature of his claims. Beyond a vague allusion to due process, Plaintiff did not cite any particular constitutional right in the Second Amended Complaint. "The first step in any § 1983 claim is to identify the specific constitutional right allegedly infringed." *Cantu*, 933 F.3d at 420 n. 2. A general reference to "due process" could refer to any number of constitutional provisions and rights. The Court declines to guess which specific rights Plaintiff believes the Defendants violated, or to make Plaintiff's argument for him as to how the Second Amended Complaint states a claim for relief. In the absence of clearer allegations or any clarification in briefing, the Court concludes that Plaintiff has failed to state a claim that Peterson deprived him of a constitutional right.

## XI. CONCLUSION

For these reasons, the Court **grants** the pending Motions to Strike [49, 55] and **grants** the pending Motions to Dismiss [14, 16, 25, 27, 29, 32, 34, 41]. Plaintiff's claims against Defendants Herman Cox, James Lagasse, Jeff Bruni, Leonard Papania, Dustin Uselton, Luke Wilson, Troy Peterson, Hugh Keating, and Faith Peterson are **dismissed without prejudice**. The Court **denies** Defendants'

requests for sanctions.

SO ORDERED AND ADJUDGED this 13th day of April, 2020.

/s/     Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE